IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2015

**LARRY STEPHEN BRUMIT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F-34370B     David M. Bragg, Judge**

———————————

**No. M2014-01039-CCA-R3-ECN - Filed April 23, 2015**

———————————

Larry Stephen Brumit ("the Petitioner") appeals from the summary dismissal of his Petition for Writ of Error Coram Nobis. Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Larry Stephen Brumit, Mountain City, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; and William Whitesell, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual and Procedural Background**

On July 7, 1997, the Petitioner was convicted of two counts of first degree murder and one count of conspiracy to commit first degree murder. This Court affirmed his convictions on direct appeal. State v. Larry S. Brumit, No. M1999-00154-CCA-R3-CD, 2000 WL 502681, at *16 (Tenn. Crim. App. April 28, 2000), perm. to app. denied (Tenn. Dec. 4, 2000). On December 27, 2001, the Petitioner filed a petition for post-conviction relief alleging, among other things, ineffective assistance of counsel. The petition was denied, and

this Court affirmed the denial on appeal. Larry Stephen Brumit v. State, No. M2003-00488-CCA-R3-PC, 2004 WL 1064131, at *13 (Tenn. Crim. App. May 12, 2004), perm. to app. denied (Tenn. Sept. 7, 2004).[1]

On March 18, 2014, the Petitioner filed a Petition for Writ of Error Coram Nobis ("the petition"). In that petition, the Petitioner noted that more than one year had passed since the final judgment was entered in this case but averred that less than one year had passed since the disclosure of the newly discovered evidence. The newly discovered evidence was a copy of a recorded interview between himself and trial counsel recorded in the Rutherford County Adult Detention Center shortly after the Petitioner was arrested. The Petitioner discovered this tape in a box he received from the State in response to his public records request.

The Petitioner asserted that such evidence "was gathered in violation of the Fourth Amendment and violated his Sixth Amendment right to effective assistance of counsel . . . Additionally, such communication violates Tennessee Code Annotated §§ 23-3-105, 23-3-107, 41-4-114, and Art. I. §§ 7, 8, and 9 of the Constitution of the State of Tennessee." He further claimed that the newly discovered evidence would have resulted in a different judgment at trial because "the District Attorney's Office had privileged information regarding the underlying facts of the case along with a 'play-book' of the defense strategy that would be used at trial." Additionally, the Petitioner claimed "that the recorded conversations guided the government's trial strategy and produced, directly or indirectly, at least some of the evidence relied upon by the government at trial." In support of these arguments, the Petitioner cited Strickland v. Washington, 466 U.S. 668 (1984), and United States v. Cronic, 466 U.S. 648 (1984).

This Court has listened to the tape recording. It begins with a 911 call made by the wife of one of the victims. After a break in the recording, it switches to a recorded interview between the Petitioner and trial counsel and clearly contains confidential communications. It appears to be an initial meeting between trial counsel and the Petitioner in which they discussed the facts of the case and the Petitioner's involvement in the offense. Additionally, trial counsel explained possible plea deals that he may be able to negotiate on the Petitioner's behalf, as well as the possibility that the Petitioner could take the case to trial. There are three references that indicate both parties knew that trial counsel was recording their conversation. First, at the beginning of the recording, trial counsel said, "Like I was saying, this is the second tape, by the way, of my interview with [the Petitioner], June the 7th."

---

[1] This Court's archived post-conviction appeal file was severely damaged by the flood on May 1, 2010. We have reviewed the file as thoroughly as possible but have not found the recording in what appears to be trial counsel's complete file which was entered as an exhibit in the post-conviction hearing.

Second, when the Petitioner was speaking, trial counsel told him, "I was going to say, don't talk real loud. Loud enough so that the tape recorder can pick it up." Finally, at the conclusion of the interview, trial counsel asked, "Okay. Anything else before I turn this thing off?" The Petitioner responded in the negative and the recording ends. It is unclear when or from whom the State received a copy of the recording that was provided to the Petitioner.

On April 8, 2014, before the State filed a response, the coram nobis court summarily dismissed the petition. The coram nobis court found that the Petitioner's claims did not relate to newly discovered evidence of matters that could have been litigated at trial but instead asserted a violation of his Sixth Amendment rights. It also summarized trial counsel statements as "the Petitioner's attorney advised him then not to speak loudly as there is a chan[c]e it could be picked up on a tape recorder" and concluded that, if the Petitioner was concerned that the State had a recording of his conversation, he could have addressed it during the trial. Additionally, the coram nobis court noted that the Petitioner had failed to establish how the State's possession of the taped interview would have resulted in a different judgment at trial. Finally, the coram nobis court concluded that the petition was time-barred.

On May 8, 2014, the Petitioner filed a pro se Motion for New Trial. On May 12, 2014, the coram nobis court dismissed the Motion for New Trial, noting that the Petitioner was convicted in September 1996 and the judgments were entered in June 1997. As such, the coram nobis court held that the 2014 Motion for New Trial was "exceedingly past due." To the extent that the Motion for New Trial was a request that the coram nobis court reconsider its ruling on the petition, the coram nobis court declined to do so. Instead, it noted that the proper procedure to challenge the denial of the petition was to file an appeal in this Court. On May 21, 2014, the Petitioner filed an untimely notice of appeal.

## II. Analysis

On appeal, the Petitioner argues that due process requires tolling the statute of limitations for his petition. First, he claims that the coram nobis court mischaracterized the facts when it found that "the Petitioner's attorney advised him then not to speak loudly as there is a chan[c]e it could be picked up on the tape recorder." Instead, the Petitioner asserts that he did not have any reason to suspect that the State would be in possession of a taped conversation between himself and trial counsel until he found the recording in their files, and as such, the grounds for relief actually arose after the limitations period expired and the dismissal of his petition as time-barred would deny him a reasonable opportunity to present his claim. Second, the Petitioner contends that the coram nobis court "erroneously dismissed the constitutional violations asserted in the petition," citing Strickland and Cronic to support his claim. See generally Cronic, 466 U.S. 648; Strickland, 466 U.S. 668. Additionally, he argues that "[t]he Sixth Amendment to the United States Constitution and article I, § 9 of the

Tennessee Constitution guarantee the right to assistance of counsel" and that the State's possessing the recorded conversation entitles him to a presumption of prejudice.

As an initial matter, we note that the Petitioner did not timely file his notice of appeal. Under Tennessee Rule of Appellate Procedure 4(a), the notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." The Petitioner argues that his notice of appeal was timely filed because his Motion for New Trial extended the time in which he could file an appeal. However, Rule 33(b) of the Tennessee Rules of Criminal Procedure states that a motion for new trial must be reduced to writing "within thirty days of the date the *order of sentence* is entered." (emphasis added.) The provision is mandatory, and the time for filing a motion for new trial may not be extended. State v. Stephens, 264 S.W.3d 719, 728 (Tenn. Crim. App. 2007).

In this case, the judgments of conviction were entered on July 3, 1997, 17 years before the Petitioner filed his Motion for New Trial. Therefore, the Motion for New Trial was untimely filed and cannot be used to suspend the time in which the notice of appeal must have been filed. See Tenn. R. App. P. 4(c). To the extent that the Defendant's motion constitutes a motion to rehear or reconsider, this Court has previously noted that such motions are not authorized by the Tennessee Rules of Criminal Procedure and, therefore, do not "suspend the running of an appeal time from the entry of the judgment." State v. Lock, 839 S.W.2d 436, 440 (Tenn. Crim. App. 1992) (citing State v. Bilbrey, 816 S.W.2d 71, 74 (Tenn. Crim. App. 1991). However, Rule 4(a) also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). In the interest of justice, we have decided to excuse the Petitioner's untimely filing of his notice of appeal and will consider the merits of his claim that due process requires tolling the statute of limitations in this case.

Tennessee Code Annotated section 40-26-105 provides relief in criminal cases by petition for error coram nobis and states in pertinent part:

> The relief obtainable by this proceeding shall be confined to error dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (2014).

The writ of error coram nobis is "an *extraordinary* procedural remedy," providing relief in only a limited number of cases. State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 165, 167 (Tenn. 1966)). The decision of whether to grant or deny a petition for writ of error coram nobis on its merits rests within the sound discretion of the trial court. State v. Vasques, 221 S.W.3d 514, 527-28 (Tenn. 2007); Hart, 911 S.W.2d at 375. Before granting relief, the evidence must establish, and the coram nobis court must find, "that the subsequently or newly discovered evidence 'may have resulted in a different judgment had it been presented at the trial.'" Hart, 911 S.W.2d at 375 (quoting Tenn. Code Ann. § 40-26-105). Post-conviction claims, such as ineffective assistance of counsel, are not cognizable under coram nobis proceedings. Domingo Ponce v. State, No. M2004-02257-CCA-R3-CO, 2005 WL 1303125, at *3 (Tenn. Crim. App. May 31, 2005).

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103 (2014); Harris v. State, 301 S.W.3d 141, 144 (Tenn. 2010). "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." Harris, 301 S.W.3d at 144 (citing Mixon, 983 S.W.2d at 670). Calculating the statute of limitations in this manner is consistent with the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." Mixon, 983 S.W.2d at 670; Harris, 301 S.W.3d at 144. Whether a claim is time-barred is a question of law, which we review *de novo*. Harris, 301 S.W.3d at 144 (citing Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007)).

The State bears the burden of raising the statute of limitations as an affirmative defense. Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995). However, the State's failure to do so will not result in a waiver "if the opposing party is given fair notice of the defense and an opportunity to rebut it." Id. In other words, if the petitioner had notice that the State intended to rely on statute of limitations as a defense, then no prejudice results from the State's failure to specifically plead the defense, and the defense is not waived. Id.

In certain circumstances, due process considerations may require tolling the statute of limitations. Workman v. State, 41 S.W.3d 100, 101 (Tenn. 2001). To determine whether due process requires tolling, we must balance the State's interest in preventing "stale and groundless claims" against the petitioner's interest in having a hearing to present newly discovered evidence which may have led the jury to a different verdict if it had been presented at trial. Id. at 103. To balance these interests, courts should use a three-step analysis:

(1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Sands, 903 S.W.2d at 301; see also Harris, 301 S.W.3d at 145.

In this case, the Petitioner noted in his petition that "more than one year ha[d] passed since the final judgment in this case." We interpret his comment to signal that he had notice that the State could rely on the statute of limitations as a defense. Therefore, even though the record does not contain the State's response to the petition, if indeed there was a response, the statute of limitations defense was not waived because the Petitioner had "fair notice of the defense." See Sands, 903 S.W.2d at 299.

The Petitioner's judgments of conviction were entered on July 3, 1997. It is apparent from this Court's opinion on direct appeal that the Petitioner filed post-trial motions, but neither those motions nor the orders disposing of those motions are included in the record. Nevertheless, the direct appeal was filed in this Court in 1999 so the post-trial motions must have been disposed of by the trial court before that date. Because "the one-year coram nobis statute of limitations begins to run, thirty days after entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion," the latest the Petitioner could have timely filed a petition for writ of error coram nobis was some time in 2000, and the petition filed in 2014 was filed well outside the statute of limitations. Mixon, 983 S.W.2d at 663.

As to the second step of the analysis, we are unable to tell whether the alleged grounds for relief "actually arose after the limitations period would normally have commenced." See id. at 301. There is no indication in the record as to when the State received the recording of the Petitioner and trial counsel, so we have no way of determining whether the Petitioner actually could have litigated his claims at trial.

Nevertheless, a strict application of the statute of limitations does not work to deny the Petitioner an opportunity to present his claim. See id. Rather, the Petitioner's stated claim is not cognizable in an error coram nobis proceeding. The substance of the Petitioner's argument asserts a post-conviction claim for ineffective assistance of counsel on the ground that trial counsel's representation was undermined because the State had a "play-book of the defense strategy." Because error coram nobis relief is not appropriate for claims of

ineffective assistance of counsel, <u>Domingo Ponce</u>, 2005 WL 1303125, at *3, we find that the Petitioner failed to present a cognizable claim. Therefore, due process does not require tolling the statute of limitations because the Petitioner did not allege a cognizable ground for relief that arose after the limitations period began to run. <u>See</u> <u>Sands</u>, 903 S.W.2d at 301; <u>Harris</u>, 301 S.W.3d at 145. The coram nobis court did not abuse its discretion by summarily denying the petition.

## III.  Conclusion

For the aforementioned reasons, the judgment of the coram nobis court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE